No. 00-764

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 94

SHERRIE M. ABRAHAM, f/k/a SHERRIE M. HUNT,

        Plaintiff and Appellant,

    v.

JACK I. NELSON, d/b/a JACK NELSON
GENERAL CONSTRUCTION,

        Defendant, Respondent and
        Cross-Appellant,

    v.

PHASE 4 COBBLESTONE TOWNHOMES
OWNERS ASSOCIATION, INC.,

        Third Party Defendant, Respondent
        and Cross-Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and for the County of Missoula,
                  Honorable John S. Henson, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

                Edward A. Murphy, Datsopoulos, MacDonald & Lind, Missoula, Montana

        For Respondents:

                Stephen M. Frankino, Hughes, Kellner, Sullivan & Alke, Helena,
                Montana (Nelson)

                Paul Sharkey, Sharkey & Northcutt, PLLP, Missoula, Montana
                (Owners Association)

                        Submitted on Briefs:  April 19, 2001
                                  Decided:  May 9, 2002

Filed:

          _____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Sherrie M. Abraham (Abraham) appeals from an order of the Fourth Judicial District Court, Missoula County, granting summary judgment against her and for Respondent, Jack I. Nelson (Nelson). Nelson cross-appeals from the District Court's dismissal of its third party claim against Phase 4 Cobblestone Townhomes Owners Association, Inc. (Association), and the Association cross-appeals the District Court's decision to decline to rule on the Association's summary judgment motion.  We affirm.

¶2    Abraham contends that the District Court erred in granting summary judgment in favor of Nelson and against Abraham.  On cross-appeal, Nelson and the Association raise the District Court's failure to grant their respective motions for summary judgment.

*BACKGROUND*

¶3    On or about November 29, 1994, Abraham agreed to purchase a residence in Missoula, Montana, from defendant Nelson.   The residence was located in a development known as Phase 4 Cobblestone Townhomes, of which Nelson, d/b/a Jack Nelson General Construction, was both the developer and general contractor.  Sometime in 1997 the basement of Abraham's townhome flooded.  On April 20, 1998, Abraham filed a Complaint against Nelson alleging that he negligently designed and built the residence, breaching implied warranties of quality workmanship, good construction and habitability, and causing the basement to flood during the 1997 spring snow melt.  Specifically, Abraham alleged that Nelson contoured the land around her home so as to move water towards her townhome instead of away from it, and failed to install a drain tile or other system to move water away from the foundation.

2

¶4　On June 1, 1999, Nelson filed a third-party Complaint against the Association, alleging that the Association had, among other duties, the duty of snow removal and the installation and maintenance of underground drainways and sprinkler systems. Nelson alleged that water accumulation near Abraham's residence may have been the product of too many sprinkler heads placed within a small area near Abraham's townhome, causing excessive accumulation of water near the foundation of her home. Nelson further alleged that the Association or its agents plowed a large amount of snow into a mound near Abraham's townhome in 1997 which either caused or contributed to the water accumulation resulting from the sprinkler system, thereby causing damage to Abraham's basement.

¶5　After completion of discovery, the Association filed a motion for summary judgment contending that Nelson presented no evidence that the Association breached any duty or caused any damages to Abraham's townhome. Nelson filed a motion for summary judgment contending that Abraham had presented no specific date when the water damage occurred and presented no evidence as to the cause of the water damage or any evidence linking negligence attributable to Nelson to the water damage. Nelson argued Abraham could not prove what caused the water damage, and therefore, could not sustain the element of causation.

¶6　After hearing the motions, the District Court entered its Opinion and Order on June 15, 2000, granting summary judgment in favor of Nelson and against Abraham, finding that Abraham's Complaint was deficient and that Abraham did not meet the causation

3

element for a negligence claim to lie. The District Court found that there was no expert testimony which might illustrate how the water damage occurred nor testimony illustrating how Nelson's design and construction facilitated or caused the water damage. The District Court also entered judgment dismissing Nelson's third party complaint against the Association, declining to rule on the Association's motion for summary judgment.

¶7 Abraham appeals and requests this Court to remand this matter for trial. Nelson cross-appeals the dismissal of his third party complaint against the Association to protect his interest should this Court reverse the District Court's grant of summary judgment in his favor. For the same reason, the Association appeals that portion of the District Court's order declining to rule on its motion for summary judgment against Nelson.

¶8 Did the District Court err in granting summary judgment in favor of Nelson and against Abraham?

¶9 This Court reviews an order granting summary judgment *de novo*. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21 (citations omitted). We use the same standards used by the trial court: first, whether issues of material fact exist and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56, M.R.Civ.P.; *Winslow v. Montana Rail Link, Inc.*, 2000 MT 292, ¶ 38, 302 Mont. 289, ¶ 38, 16 P.3d 992, ¶ 38.

¶10 The burden is first on the movant to demonstrate that no genuine issue of material fact exists. Once this has been

4

accomplished, the burden then shifts to the non-moving party to prove that a genuine issue does exist. Having determined that a genuine issue of fact does not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## DISCUSSION

¶11 A negligence action requires proof of four elements: (1) existence of a duty; (2) breach of the duty; (3) causation; and (4) damages. If the plaintiff fails to offer proof of one of these elements, the action in negligence fails and summary judgment in favor of the defendant is proper. *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, ¶ 23, 290 Mont. 126, ¶ 23, 962 P.2d 1205, ¶ 23. In *Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 916 P.2d 122, this Court held that "[i]n those cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged." *Busta*, 276 Mont. at 371, 916 P.2d at 139. As Abraham's allegations of negligence in this case do not involve an issue of intervening cause, proof of the element of causation is satisfied by proof that Nelson's conduct was a cause-in-fact of the damage alleged.

¶12 To satisfy his burden as the movant for summary judgment, Nelson first presented deposition testimony from Abraham which, he argued, exhibited a discrepancy between her Complaint and her testimony as to the date of the flooding. Abraham's Complaint

5

states that the damage occurred in the spring of 1997. Nelson noted that Abraham's deposition testimony reflects an August 1997 flood.

¶13 Second, Nelson relied on Abraham's testimony in her deposition that she did not know what may have actually caused the flooding in her basement, and further, that she likely did not discover the flood damage for up to three days after it occurred because she was not living in the townhome at the time.

¶14 Abraham countered Nelson's motion for summary judgment with an affidavit, reaffirming that the time frame in the Complaint was the correct time frame—that the flooding at issue did indeed occur in April or early May of 1997, shortly after remodeling work had been completed on her basement, rather than in August of 1997. Abraham stated in her affidavit that the flooding occurred shortly after the remodeling work was completed on her basement. She included with her affidavit a Missoula Building Inspection Department inspection record which showed that the remodeling project received its final approval on April 21, 1997. Abraham also stated in her affidavit that the Missoula area received a lot of snow in the winter of 1996-97, and that her subdivision receives substantially less sunlight than other areas of the Missoula Valley, thereby slowing down the rate of snow melt and creating saturated ground in late April of 1997.

¶15 In this response, Abraham provided no evidence to supplement her deposition testimony that she did not know the actual cause of the flooding in her basement or the exact date that it may have

occurred. Rather, Abraham argued that the lack of knowledge she demonstrated in her deposition testimony, in addition to other evidence, at the very least indicated an existence of a genuine issue of material fact as to the exact date that the flooding occurred, thereby making summary judgment inappropriate.

¶16 On appeal Abraham also argues that the District Court erred in granting summary judgment because Nelson admitted his own negligence in his deposition testimony. During discovery, Abraham elicited deposition testimony from Nelson that he had lowered the elevation of some townhomes, including Abraham's, anywhere from one to two feet lower than the engineers had planned in their original drawings. According to Nelson, these particular townhomes were lowered either to the benchmark set by engineers or maybe even slightly under. His deposition testimony reflects that prior to lowering the foundations, he consulted with at least two engineers involved with the construction of the townhomes and each would have preferred, for drainage purposes, that the foundations of the townhomes remain approximately one foot above their established benchmark.

Comment [COMMENT1]: Plaintiff principle brief, Trans. p. 61-62

¶17 Nelson also testified to building a trench on the north side of the townhome to carry water away. The centerline of the trench was approximately three to four feet from the side of the house and six to eight inches above an impermeable layer of Visquine. Abraham argues that the distance of the trench from the foundation and its depth above the impermeable layer was too shallow to properly drain the area on the north side of the townhome. It is

7

the combination of lowering of the foundation of Abraham's townhome and the alleged shallowness of the drainage trench that Abraham attributes to Nelson as foreseeable negligence from which one could reasonably infer that there was a drainage problem and that an accumulation of melting snow might possibly breach the foundation wall of the townhome.

¶18  Abraham asserts that this evidence demonstrates a breach of duty on the part of Nelson which creates a genuine issue of material fact as to whether the acts of Nelson, in fact, caused the damage to Abraham's townhome.

¶19 As in the District Court, Nelson contends that Abraham presented no evidence proving that, but for the actions of Nelson, Abraham's basement would not have flooded.  Specifically, Nelson contends that, although Abraham argues that his lowering of the units and the depth of the drainage trench must have somehow caused the flood damage during an April snow melt, Abraham failed to present evidence establishing that Nelson's actions were the cause-in-fact of the water damage.

¶20  This Court's holding in *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, 290 Mont. 126, 962 P.2d 1205, is informative in the current matter.  In *Gentry* a personal representative brought a wrongful death and a survival action to recover damages sustained by Barbara Gentry, who was struck in the head by a bullet when Brent Bacon stumbled and accidentally discharged his rifle when attempting to walk up two sets of stairs.  *Gentry*, ¶ 9.

8

¶21   Gentry alleged that the defendant was negligent for failing to maintain the stairs to the deck in a reasonably safe condition. Gentry contended that the bottom stair was unstable and that the area leading to it was cluttered with various debris, thereby causing Bacon to stumble. *Gentry*, ¶ 12.  The defendants filed for summary judgment based on Bacon's testimony that he was unable to attribute his fall to the condition of the stair or to any clutter near it.  Bacon repeatedly gave testimony that he did not remember whether he tripped out of clumsiness or whether he missed a step or even whether he may have tripped just prior to reaching the steps. *Gentry*, ¶¶ 27-29.

¶22   Based on Bacon's testimony, we stated that the most that could be inferred was that Bacon fell when he was about to ascend the stairs, whereas the specific cause of his fall would still require speculation. *Gentry*, ¶ 32.  Because Gentry offered no evidence to prove that a condition of the property caused Bacon to stumble and fall prior to discharging his rifle, we stated that in the context of summary judgment proceedings, neither suspicion nor speculation is sufficient to defeat a motion for summary judgment.  "A suspicion, regardless of how particularized it may be, is not sufficient to sustain an action or to defeat a motion for summary judgment.  Unsupported conclusory or speculative statements do not raise a genuine issue of material fact.  The trial court has no duty to anticipate possible proof." *Gentry* ¶ 32 (citing *Gates v. Life of Mont. Ins. Co.* (1982), 196 Mont. 178, 182, 638 P.2d 1063, 1066).

9

¶23 This Court's previous decision in *Krone v. McCann* (1982), 196 Mont. 260, 638 P.2d 397 (*overruled on other grounds*), although using the now defunct "proximate cause" language, is also informative. In *Krone* the plaintiff sought damages for injuries sustained while walking on the defendant's property. However, the plaintiff was unable to identify what caused her to stumble. In affirming the district court's grant of summary judgment, we stated:

> [T]he fact is undisputed that the appellant cannot describe what caused her injury. She does not know if it was merely a mound of dirt or an old corral pole. In an action for negligence, a plaintiff must produce evidence from which it can be reasonably inferred that *negligent conduct on the part of the defendant or its agents was the proximate cause of the plaintiff's injuries*. . . Here, the appellant simply does not know exactly what caused her injury. As noted above, the respondents cannot be the insurers of the appellant and held liable for her injury merely because an accident happened on their land.

*Krone*, 196 Mont. at 266, 638 P.2d at 400-01 (emphasis supplied).

¶24 Initially we conclude that Nelson met his burden as the movant on summary judgment of demonstrating that no material question of fact existed regarding the element of causation when he presented Abraham's deposition testimony that she simply did not know the cause of the flooding. Upon meeting this burden, it then became incumbent upon Abraham to provide facts to prove the element of causation, thereby creating a question of fact which may be deemed material.

¶25 In response, Abraham presented the deposition testimony of Nelson to demonstrate Nelson's potential negligence, or breach of legal duty, in lowering the foundation of Abraham's townhome and

10

placing too shallow of a trench on the north side. However, Abraham presented no evidence that Nelson's potential negligence did, in fact, cause the flooding to Abraham's basement. Rather, Abraham argues that her evidence regarding Nelson's ostensible breach of duty is sufficient for a fact-finder to infer cause-in-fact. From the above facts, the most that could be inferred is that there may possibly have been a drainage problem on the north side of Abraham's townhome, but the reason and cause-in-fact of the damage to her basement would still require speculation. Abraham herself testified that she did not know what actually caused the damage to her basement and the above facts are insufficient to establish a cause. Once Nelson met his burden, it became incumbent upon Abraham to offer material facts of a substantial nature to prove that the flooding was indeed the result of snow melt and that the snow melt would not have caused the flooding to her basement but for negligence on the part of Nelson. *Fang v. Bock*, 2001 MT 116, ¶ 13, 305 Mont. 322, ¶ 13, 28 P.3d 456, ¶ 13.

¶26 Essentially, Abraham argues on appeal that it is precisely the lack of evidence regarding the element of causation that creates the material question of fact, making summary judgment inappropriate. Abraham's argument misapprehends the fundamental nature of summary judgment. Once a movant for summary judgment satisfies the burden that no material question of fact exists, the non-moving party cannot merely point to lack of evidence as the factor creating a material question. As we stated in *Gentry*, a suspicion, regardless of how particularized, is insufficient to

11

sustain an action or to defeat a motion for summary judgment. Unsupported conclusory or speculative statements do not raise a genuine issue of material fact. *Gentry,* ¶ 32 (citing *Gates v. Life of Mont. Ins. Co.* (1982), 196 Mont. 178, 182, 638 P.2d 1063, 1066).

¶27  Nor can Abraham argue that because evidence of breach of duty may be strong, the fact-finder needs no proof of causation, but is free to infer such a link.  In a negligence action, such as the instant matter, the plaintiff cannot rest upon evidence of the defendant's negligence, but must provide evidence that the defendant's negligence is the cause-in-fact of the plaintiff's injury.  *Gentry*, ¶ 25.  Like the plaintiffs in *Krone* and *Gentry*, Abraham simply does not know what caused the flood damage to her townhome, but rests upon evidence of Nelson's negligence, providing no evidence linking Nelson's negligence to her flood damage. *Gentry*, ¶¶ 27-31; *Krone*, 196 Mont. at 266, 638 P.2d at 400-01. Abraham urges the fact-finder to freely infer such a causal link. However, Nelson cannot be held liable simply because damage did indeed occur to Abraham's property.

¶28  Viewing the facts in a light most favorable to Abraham, we conclude that Abraham failed to submit facts of a substantial nature to create a material question of fact upon which the District Court could determine whether Nelson's lowering of the foundation and placement of the trench was a cause-in-fact of the flooding in Abraham's townhome.  Summary judgment was therefore appropriate.

¶29 The decision of the District Court is affirmed.  Because we conclude that summary judgment was properly entered for Nelson against Abraham, we need not address the cross-appeals of Nelson and the Association.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER